Robert GOLDSTEIN, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

W.L. GORE & ASSOCIATES, INC., Defendant.

No. 95 C 1222.

United States District Court, N.D. Illinois, Eastern Division.

May 19, 1995.

Robert A. Holstein, Aron David Robinson, Joshua M. Avigad, Holstein, Mack & Klein, Robert F. Lisco, Chicago, IL, for plaintiff.

John N. Scholnick, Jennifer A. Barrett, Neal, Gerber & Eisenberg, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

On January 24, 1995, plaintiff, Robert Goldstein ("Mr. Goldstein"), brought this product liability action against defendant, W.L. Gore & Associates, Inc. ("Gore"), in the Circuit Court of Cook County, Illinois. The three-count complaint charges Gore with negligence, strict liability, and breach of warranty in connection with the manufacture and sale of a defective prosthesis. On February

27, 1995, Gore removed the action to federal court. Mr. Goldstein moves to remand the action to state court. For the reasons stated herein, this motion is granted.

## Discussion

■ "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993) (citation omitted). Any doubt regarding jurisdiction should be resolved in favor of remand. *Id.* (citing *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir.1976)); *Roe v. O'Donohue,* 38 F.3d 298, 304 (7th Cir.1994) (citations omitted). As the party seeking removal in this case, Gore bears the burden of establishing federal jurisdiction. *Doe v. Allied–Signal, Inc., supra,* 985 F.2d at 911 (citation omitted).

■ Under the general removal statute, a defendant may remove a state-court action to federal court only if the action originally could have been brought in federal court. 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). In this case, Gore argues that federal jurisdiction exists on the basis of federal question as well as diversity jurisdiction.

### A. *Federal Question Jurisdiction*

■ Federal district courts have original jurisdiction in civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The question of whether a claim "arises under" federal law for purposes of 28 U.S.C. § 1331 must be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986) (citing *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983)). Under the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (citing *Gully v. First National Bank,*

299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). The availability of a federal defense which might defeat the plaintiff's claims does not provide a basis for removal. *Burda v. M. Ecker Co.,* 954 F.2d 434, 438 (7th Cir.1992) (citations omitted). The complaint in this case alleges state law claims of strict liability, negligence, and breach of warranty; it does not allude to any federal law. Since the complaint does not present a question of federal law on its face, federal jurisdiction does not exist under the "well-pleaded complaint" rule.

■ Gore does not contest this conclusion. Instead, Gore argues that since its prosthetic knee ligament is a Class III medical device approved and regulated by the U.S. Food and Drug Administration, Mr. Goldstein's state law claims are completely pre-empted by the Medical Device Amendments to the Food, Drug and Cosmetics Act ("FDCA") and are thus removable to federal court. The U.S. Supreme Court has recognized an exception to the "well-pleaded complaint" rule known as the "complete pre-emption" doctrine. In *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court explained:

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character.

*Id.* at 63–64, 107 S.Ct. at 1546; *see also Caterpillar, Inc. v. Williams, supra,* 482 U.S. at 393, 107 S.Ct. at 2430 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law"). Under these circumstances, a court may re-characterize the plaintiff's state law claim as a federal claim

so that removal is proper. *Lister v. Stark,* 890 F.2d 941, 943 (7th Cir.1989), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). To determine whether a cause of action has been completely pre-empted, courts must look to Congressional intent. *Id.; Metropolitan Life Insurance Co. v. Taylor, supra,* 481 U.S. at 66, 107 S.Ct. at 1548 ("the touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress").

The U.S. Supreme Court has found "complete pre-emption" under Section 301 of the Labor–Management Relations Act ("LMRA") and Section 502 of the Employee Retirement Income Security Act ("ERISA"). *See Burda v. M. Ecker Co., supra,* 954 F.2d at 438 n. 5 (citations omitted). In *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the Court found that Section 301 of the LMRA was of such powerful pre-emptive force that it displaced any state claim within its scope.[1] *Id.* at 560–562, 88 S.Ct. at 1237; *Franchise Tax Board v. Construction Laborers Vacation Trust, supra,* 463 U.S. at 23, 103 S.Ct. at 2853. In *Metropolitan Life Insurance Co. v. Taylor, supra,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court noted its reluctance to find complete pre-emption even in "a provision ... that lies at the heart of a statute with the unique pre-emptive force of ERISA," but recognized that the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of the LMRA,[2] and that the legislative history of ERISA's civil enforcement provisions expressly seeks to treat suits brought thereunder in the same manner as suits brought under LMRA Section 301. *Id.* at 65–66, 107 S.Ct. at 1547. Accordingly, the Court concluded that ERISA Section 502, like LMRA Section 301, manifests a clear Congressional intent to make all claims within its scope federal question claims. *Id.* at 65–67, 107 S.Ct. at 1547–48.

▮ No such intent can be gleaned from the Medical Device Amendments to the FDCA. The provision upon which Gore relies in support of its position, 21 U.S.C. § 360k(a), does not provide an enforcement mechanism akin to the civil enforcement provisions of ERISA and LMRA. As Judge Shadur has observed, "[n]o provision even remotely comparable to [LMRA § 301 and ERISA § 502] exists in the Medical Device Amendments." *Green v. Telectronics Pacing Systems, Inc.,* No. 95 C 1977, 1995 WL 215045, at \*2 (N.D.Ill. Apr. 10, 1995). Although complete pre-emption is possible in the absence of a federal remedy, *see Caterpillar Inc. v. Williams, supra,* 482 U.S. at 391 n. 4, 107 S.Ct. at 2429 n. 4, Gore has also failed to identify any legislative history that demonstrates a Congressional intent to confer upon the Medical Device Amendments or the FDCA the same extraordinary pre-emptive power as that of LMRA and ERISA. To the contrary, the Seventh Circuit has emphasized that the scope of preemption under the Medical Device Amendments is more narrow than that of other federal statutes like ERISA. *See Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1334 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992) ("The scope of the preemption ... is limited.... It is not the sort of blanket preemption that we find in ERISA, which supersedes 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan'"). This is not to say, however, that the state law claims asserted by Mr. Goldstein are not pre-

---

**1.** LMRA § 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

**2.** ERISA § 502(f) provides:
The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

empted by the Medical Device Amendments.[3] I conclude only that Gore's pre-emption argument is a potential federal defense, which cannot support removal "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar, Inc. v. Williams, supra,* 482 U.S. at 393, 107 S.Ct. at 2430 (citation omitted).

### B. *Diversity Jurisdiction*

▇▇▇ Gore also argues that this case is removable on the basis of federal diversity jurisdiction. Diversity jurisdiction exists where the matter in controversy exceeds the sum of $50,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332. The parties are diverse in the present case: Mr. Goldstein is a resident of Berkeley, California, and Gore is a Delaware corporation with its principal place of business in Newark, Delaware.[4] *See* Notice of Removal, ¶¶ 5, 6. Accordingly, the only issue before me is whether the amount in controversy requirement is satisfied.[5]

▇▇▇ Ordinarily, the amount in controversy claimed by a plaintiff in good faith is determinative on the issue of jurisdictional amount. *NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 237 (7th Cir.1995) (citations omitted). Accordingly, a plaintiff may avoid federal diversity jurisdiction by pleading damages below the jurisdictional amount. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 294, 58 S.Ct. 586, 593, 82 L.Ed. 845 (1938) ("If [the plaintiff] does not desire to try his case in the Federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly enti-

tled to more, the defendant cannot remove"); 14A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3725 at 418–19 (2d ed. 1985). Jurisdiction is determined as of the instant of removal, and the factual allegations of the complaint inform the jurisdictional inquiry. *In the Matter of Shell Oil, Co.,* 970 F.2d 355, 356 (7th Cir.1992).

▇▇▇ Where a party challenges the court's exercise of subject matter jurisdiction, the burden rests on the party invoking federal jurisdiction to prove that the amount in controversy is sufficient by a preponderance of the evidence. *NLFC, Inc. v. Devcom Mid–America, Inc., supra,* 45 F.3d at 237; *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366 & n. 2 (7th Cir.1993) (citation omitted). In a removal action, this burden rests with the defendant. *Shaw v. Dow Brands, Inc., supra,* 994 F.2d at 366 (citation omitted). Accordingly, to avoid remand, Gore must show to a reasonable probability that more than $50,000 is in controversy in the present case. *See id.* at 366 & n. 2 (citation omitted); *Gould v. Artisoft, Inc.,* 1 F.3d 544, 547 (7th Cir.1993) (citations omitted).

▇▇▇ In this case, Mr. Goldstein alleges that he had a Gore-manufactured prosthesis implanted in his leg to repair a knee injury. After the implant, Mr. Goldstein experienced a re-injury of the knee due to a failure of the prosthesis graft. As a result of the re-injury, Mr. Goldstein will require knee reconstruction. The only allegation referring to a specific amount of damages is the total cost of reconstruction, which is estimated at $20,000 inclusive of surgeon's fees, anesthesia, physical therapy, hospitalization, and bracing.

29 U.S.C. § 1132(f).

3. A decision that pre-emption is insufficiently complete to confer federal question jurisdiction does not preclude a state court from finding state law claims to be pre-empted by federal law. *See Lister v. Stark, supra,* 890 F.2d at 943 n. 1.

4. This action was brought as a class action. In a class action, complete diversity is only required between the named plaintiffs and the named defendants. *In re Agent Orange Product Liability Litigation,* 818 F.2d 145, 162 (2nd Cir.1987); *In re School Asbestos Litigation,* 921 F.2d 1310, 1317 (3rd Cir.1990).

5. The claims of each plaintiff in a class action must satisfy the jurisdictional amount; the claims may not be aggregated to satisfy the amount in controversy requirement. *Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973); *Griffith v. Sealtite Corp.,* 903 F.2d 495, 498 (7th Cir.1990); *Griffin v. Dana Point Condominium Association,* 768 F.Supp. 1299, 1301–02 (N.D.Ill.1991). As such, Mr. Goldstein's claims alone are the focus of my jurisdictional inquiry.

Mr. Goldstein also seeks unspecified damages for mental anguish, anxiety, pain and suffering, attorney's fees and costs.

In attempting to show that Mr. Goldstein's claims exceed $50,000, Gore presents several case reports on judgments obtained in personal injury actions in Cook County, Illinois. Gore interprets these reports to demonstrate that a plaintiff who proves recoverable medical costs of approximately $20,000 is often awarded over $30,000 in additional damages for pain and suffering, suggesting that Mr. Goldstein would be likely to recover well over $50,000 in this case if he is ultimately successful. This argument is unpersuasive. Gore makes no attempt to compare the injuries in the case reports to those sustained by Mr. Goldstein in this case. Many of these cases involved dissimilar, severely debilitating injuries with permanent disfigurements.[6] Additionally, a number of these verdicts included substantial damages for lost earnings, which Mr. Goldstein does not seek in this case. By contrast, Mr. Goldstein identifies a variety of cases involving similar knee-related injuries in which the verdicts amounted to considerably less than $50,000 inclusive of pain and suffering damages.[7] As other courts have noted, verdicts in other cases are generally not helpful in determining potential damages. *See Cole v. Freightliner Corp.,* No. 91 C 733, 1991 WL 42163, at *2 (N.D.Ill. Mar. 21, 1991); *Kliebert v. Upjohn Co.,* 915 F.2d 142, 147 (5th Cir.1990), *rehearing en banc granted,* 923 F.2d 47 (5th Cir.), *appeal dismissed per stipulation of settlement,* 947 F.2d 736 (5th Cir.1991); *Gober v. Allstate Insurance Co.,* 855 F.Supp. 158, 161 (S.D.Miss.1994); *Coleman v. Southern Norfolk,* 734 F.Supp. 719, 721 (E.D.La.1990) ("[d]amage claims raised in other cases do not amount to the type of 'affirmative showing' of the Court's jurisdiction that is required of parties seeking removal"). Gore has failed to demonstrate to a reasonable probability that more than $50,000 is in controversy in this case.

### Conclusion

For the foregoing reasons, Gore has not met its burden of demonstrating the existence of federal jurisdiction in this case. Accordingly, the action is remanded to the Circuit Court of Cook County, Illinois.

---

**6.** *See, e.g., Stewart v. McCarthy,* No. 89L–14356 (massive head injuries resulting in death; verdict $975,000); *Mack v. Loyola University Hospital,* No. 89L–6979 (spinal cord damage with partial sensory and motor function loss; verdict $6,012,758); *Bostler v. Automotion Inc.,* No. 89L–7943 (severed tendons resulting in claw deformity of the hand; verdict $234,520); *Janus v. Revel Distribution Inc.,* 91L–7708 (dislocated proximal biceps tendon resulting in permanent disability; verdict $200,000); *Eaker v. Krillic,* No. 90L–1037 (fractured collar bone, cracked ribs, and punctured lung; verdict $129,812); *Fox v. Fisher,* 92M3–100314 (concussion and cervical disc syndrome with post-traumatic arthritis; verdict $70,121); *Senderak v. Mitchell,* 90L–3217 (unnecessary hysterectomy; verdict $1,149,052); *Freitas v. Brink's Inc.,* 91C–5530 (crushed foot and reflex sympathetic dystrophy; verdict $335,997); *Perez v. Ber–Nello Inc.,* 90L–11861 (blinded eye and shoulder fracture; verdict $435,045).

**7.** *See, e.g., Schultz v. Drag,* No. 88L–1800 (torn anterior horn of medial meniscus with chondromalacia, misaligned patella, need for future patellectomy with prosthetic replacement; verdict $25,000); *O'Connor v. DeLange,* 91M2–100210 (cartilage damage and impingement syndrome, future artificial knee replacement may be required; verdict $13,500); *Schuch v. Hondo Inc.,* No. 89L–13388 (detached medial meniscus in right knee; verdict $18,000); *Calvert v. Janar Corp.,* 89L–12172 (fracture of anterior tibial spine of left knee; verdict $17,958).