**Michael McQUERRY, Plaintiff,**

v.

**AMERICAN MEDICAL SYSTEMS, INC., Charles M. Feinstein, M.D., and Watertower Surgicenter Corp., Defendant.**

**No. 95 CV 2109.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 18, 1995.

---

James Paul Costello, James Paul Costello, Ltd., Chicago, Illinois, for Michael McQuerry.

Stephanie Ann Scharf, Jenner & Block, Chicago, Illinois, for American Medical Systems, Inc.

Stephanie Ann Scharf, Jenner & Block, Chicago, Illinois, Douglas Charles Rose, Ruff, Weidenaar & Reidy, Ltd., Chicago, Illinois, for Charles M. Feinstein M.D.

Stephanie Ann Scharf, Jenner & Block, Chicago, Illinois, Kevin Campbell, III, James Calvin Downing, Williams & Montgomery, Chicago, Illinois, for Watertower Surgicenter Corp.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

■ Plaintiff Michael McQuerry brings this action under the Medical Devices Amendments (MDA) to the Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301–395, against American Medical Systems, Inc. (AMS), Charles Feinstein, and Watertower Surgicenter Corporation. McQuerry seeks to recover damages he suffered as a result of the failure of a penile implant manufactured by AMS and implanted by Feinstein, who at the time was employed by Watertower Surgicenter. McQuerry initially brought his case

in the Circuit Court of Cook County. On April 7, 1995, AMS filed a notice of removal. McQuerry now asks us to remand the case to state court. For the reasons set forth below, his motion is granted.

### FACTS [1]

On January 13, 1994, Feinstein performed penile implant surgery on McQuerry at the Watertower Surgicenter. Feinstein inserted into McQuerry a "700 Ultrex Inflatable Penile Prosthesis," an AMS product. The implant apparently malfunctioned, as McQuerry alleges that AMS' defective design of the device and failure to warn of potential dangers disfigured him, forced him to undergo additional medical treatment, caused him pain and suffering, and prevented him from engaging in his usual activities. He also alleges that he will suffer similar damages in the future because his medical problems have not yet been resolved. McQuerry claims that AMS is liable for all these damages on strict liability and negligence theories.

McQuerry began his case in state court. On April 7, 1995, AMS filed a notice of removal, arguing that "[b]ecause Congress has preempted state tort law remedies regarding the safety or effectiveness of the Class III device in this case, defendant AMS has the right to remove the action" (Notice of Removal at 2). On May 8, 1995, McQuerry filed a motion asking us to remand the case to the Circuit Court of Cook County.

### DISCUSSION

■ Ordinarily, a defendant may remove a state court case to federal court only if it could have been brought in federal court in the first place, that is, if a federal court would have original jurisdiction over the case. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). AMS does not contend that the requirements for diversity jurisdiction are satisfied here, so the only question is whether we have federal question jurisdiction. That determination is

---

1. In ruling on a motion to dismiss, "[w]e view all of the facts alleged in the complaint, as well as any inferences reasonably drawn from them, in the light most favorable to the plaintiff." *Cald-* *well v. City of Elwood*, 959 F.2d 670, 671 (7th Cir.1992). Accordingly, unless otherwise noted the facts recited here are those alleged in McQuerry's complaint.

governed by the "well-pleaded complaint rule," which holds that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429.

■ McQuerry's complaint does not raise a federal question on its face. But AMS argues that a corollary to the well-pleaded complaint rule, the "complete preemption" doctrine, provides the basis for removal. The doctrine holds that when "the pre-emptive force of a statute is so 'extraordinary'" that it completely preempts state law, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). When the complete preemption doctrine applies, it " 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Id.* (quoting *Metropolitan Life*, 481 U.S. at 65, 107 S.Ct. at 1547). AMS maintains that because "the negligence and strict liability claims asserted against AMS are completely preempted by the MDA," removal is proper (Mem. in Opp. to Mot. for Remand at 2). We disagree.

■ Supreme Court precedent on the issue of "jurisdiction by preemption" admits of two readings. *Metropolitan Life* defined the question as "whether these state common law claims are not only pre-empted by ERISA, but also displaced by ERISA's civil enforcement provision ... to the extent that complaints filed in state courts purporting to plead such state common law causes of action are removable to federal court." 481 U.S. at 60, 107 S.Ct. at 1544. This language suggests that removal is appropriate only if federal law not only preempts the state claim but also replaces it with a federal remedy.[2]

By contrast, *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), and *Caterpillar* both focused only on whether "an area of state law has been completely pre-empted." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430; *see also Franchise Tax Board*, 463 U.S. at 24, 103 S.Ct. at 2854. This approach implies that "removal may turn on the character of federal preemption rather than on whether federal law provides replacements for preempted state claims." Robert A. Ragazzo, *Reconsidering the Artful Pleading Doctrine*, 44 Hastings L.J. 273, 288 (1993). One commentator has called the two approaches the replacement model and the complete preemption model. Ragazzo, *supra*, at 278–303 (1993).

We believe that the replacement model is the better approach. Both of the statutes under which the Supreme Court has upheld removal on jurisdiction by preemption grounds, ERISA and the LMRA, create federal causes of action to replace the state causes of action they preempt. And *Metropolitan Life*, the most recent decision to uphold removal based on preemption, followed the replacement model. Moreover, despite the language cited above, the holdings of *Franchise Tax Board* and *Caterpillar* are compatible with the replacement approach. In *Franchise Tax Board*, the Court ordered the case remanded to state court because it found that the plaintiff had no cause of action under ERISA. 463 U.S. at 25, 103 S.Ct. at 2854. The Court did not inquire into the "completeness" of ERISA preemption; it asked whether the plaintiff's well-pleaded complaint stated a claim under ERISA itself or turned on a question of federal law. *Id.* at 22–28, 103 S.Ct. at 2853–56. More troubling is *Caterpillar*'s statement that "[o]nce an area of state law is completely pre-empted, any claim purportedly based on that ... law is considered, from its inception, a federal claim, and therefore arises under federal

---

**2.** We note that *Metropolitan Life* paid close attention to the similarity between the enforcement provisions of ERISA and the LMRA, both of which authorize the federal district courts to grant relief in any action falling within the scope those statutes. 481 U.S. at 65–66, 107 S.Ct. at 1547–48; *see* 29 U.S.C. § 185(a) (LMRA § 301(a)) (granting federal courts the jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization [or between labor organizations]"); 29 U.S.C. § 1132(f) (ERISA § 502(f)) (granting federal courts jurisdiction "to grant the relief provided for in subsection (a) of this section in any action"). Clearly, the Court was concerned with the availability of federal remedies.

370

law." 482 U.S. at 393, 107 S.Ct. at 2430. But the *Caterpillar* Court cited *Franchise Tax Board* as authority and, given its unanimous decision in *Metropolitan Life* two months before, the Court most likely was merely speaking in loose terms rather than adopting a new approach. We conclude, therefore, that the Supreme Court favors the replacement model. *See Corporate Travel Consultants, Inc. v. United Airlines, Inc.,* 799 F.Supp. 58, 61 (N.D.Ill.1992) ("The Supreme Court has decided that [removal on preemption grounds] requires both federal preemption of state law and the Congressional intent to make the plaintiff's cause of action removable to federal court."); *In re Air Disaster,* 819 F.Supp. 1352, 1365 (E.D.Mich.1993) (under Supreme Court precedent, "federal preemption [is] not, in itself, enough to render the plaintiff's state law claims removable"; "there [has] to be some evidence of congressional intent to make such claims removable").

■ Even if the Supreme Court had not apparently endorsed the replacement approach, we would opt to follow it because it is more faithful than the complete preemption approach to the logic that supports the jurisdiction by preemption doctrine in the first place. The doctrine's purpose is to prevent plaintiffs from avoiding removal by pleading their claims under state law when the relevant state law is preempted and federal law is the only avenue for relief. In such situations plaintiffs are in effect denying defendants the right to remove granted by § 1441, even though their complaints are necessarily based on federal law because the state law they invoke has been preempted. The replacement approach solves this problem neatly by permitting defendants to remove when there is in fact a potential federal question that would support federal jurisdiction. The complete preemption approach goes too far: it permits removal even in cases where the plaintiff can state no federal claim. The complaints in such cases do not even arguably raise a federal question and therefore are inappropriate for removal. They do not rest upon the concept that a plaintiff's claims necessarily arise from federal law, but upon the concept that federal law proscribes any relief, state or federal. That, however, is a defense to the state law claims that can be raised in state court, not a basis for removal.[3]

■ Because the MDA does not create a private right of action, *Richman v. W.L. Gore & Associates, Inc.,* 881 F.Supp. 895, 902–03 (S.D.N.Y.1995),[4] it does not replace state law with any federal remedy (at least not one that is available to individual plaintiffs).[5] Therefore McQuerry's case cannot "arise under" the MDA, as the removal statute requires when jurisdiction is premised upon the existence of a federal question.

Even if we adopted complete preemption as the proper approach (as AMS would have us do), we would still remand because the MDA does not completely preempt state law in the sense that the Supreme Court has contemplated. Both *Metropolitan Life* and *Caterpillar* emphasized the extraordinary nature of the jurisdiction by preemption doc-

3. We do not mean to suggest that jurisdiction by preemption exists only when federal law provides the type of relief that would have been available to the plaintiff in state court had his claims not been preempted. Adopting such a rule would directly contradict *dictum* in *Caterpillar* stating that the type of relief available in federal court does not affect whether the federal court has jurisdiction. 482 U.S. at 391 n. 4, 107 S.Ct. at 2429 n. 4. *Caterpillar* tells us that as long as some sort of federal relief is available, removal is appropriate, even if the relief is not what the plaintiff initially sought.

4. Many other cases support this proposition. *See, e.g., Gile v. Optical Radiation Corp.,* 22 F.3d 540, 544 (3d Cir.) (MDA case) ("violations of the FDCA do not create private rights of action"), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Fender v. Medtronic, Inc.,*

887 F.Supp. 1326, 1332 (E.D.Cal.1995) (MDA case) ("the MDA does not provide for a private right of action"); *Kemp v. Pfizer, Inc.,* 835 F.Supp. 1015, 1022 (E.D.Mich.1993) (MDA case) ("This court will not imply a personal cause of action based on violations of the MDA....").

5. We also note that the House Conference Report on ERISA stated that "[a]ll [suits to enforce benefit rights] in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the [LMRA]." *Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. at 1547–48 (quoting H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 327 (1974)). The MDA reveals no such "clear intention to make ... suits [concerning medical devices] federal questions for the purposes of federal court jurisdiction." *Id.* at 66, 107 S.Ct. at 1547.

trine. "Even with a provision such as § 502(a)(1)(B) that lies at the heart of a statute with the unique pre-emptive force of ERISA," *Metropolitan Life* was "reluctant to find that extraordinary pre-emptive power ... that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." 481 U.S. at 65, 107 S.Ct. at 1547. *Caterpillar* reiterated that removal on pre-emption grounds is only appropriate in rare cases, "primarily [those] raising claims preempted by § 301 of the LMRA." 482 U.S. at 393, 107 S.Ct. at 2430. It is only because ERISA and the LMRA contain such sweeping preemption provisions that the Court considers them extraordinary: LMRA § 301 has long been held to be a preemptive force "so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization,'" *Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. at 2853, and ERISA's preemption provision states that "the provisions of [this statute] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

 By contrast, the MDA's preemption provision states only that "no State ... may establish or continue in effect with respect to a [medical device] any requirement (1) which is different from, or in addition to, any requirement applicable under [the FDCA] to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under [the FDCA]." 21 U.S.C. § 360k(a). In the words of the

Seventh Circuit, "[this] is not the kind of blanket preemption that we find in ERISA." *Slater v. Optical Radiation Corp.*, 961 F.2d 1330, 1334 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). Therefore, the MDA is not a statute that preempts state law so completely as to render state claims federal in nature. *Green v. Telectronics Pacing Systems, Inc.*, No. 95 C 1977, 1995 WL 215045, at *2 (N.D.Ill. Apr. 10, 1995) ("No provision even remotely comparable to the one relied on in *Avco [Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968),] (as to LMRA § 301) and in *Metropolitan Life* (as to ERISA) exists in the Medical Device Amendments. It must be concluded on the strength of *Metropolitan Life* that Telectronics' preemption argument ... is nothing more than a potential federal defense and is not a fount of removal jurisdiction."); *Goldstein v. W.L. Gore & Associates, Inc.*, 887 F.Supp. 168, 171 (N.D.Ill.1995) (remanding case to state court because defendant "failed to identify any legislative history that demonstrates a Congressional intent to confer upon the [MDA] or the FDCA the same extraordinary pre-emptive power as that of LMRA and ERISA"). The MDA does not provide a basis for removing McQuerry's case to federal court.[6]

### CONCLUSION

McQuerry's motion is granted and the case is remanded to the Circuit Court of Cook County.

---

**6.** AMS points out that the Illinois Appellate Court for the Fifth District has held that the MDA does not preempt state claims concerning medical devices, a result that AMS says is contrary to that reached by every federal appellate court that has considered the issue. *See Haudrich v. Howmedica, Inc.*, 267 Ill.App.3d 630, 204 Ill.Dec. 744, 642 N.E.2d 206 (1994), *appeal allowed*, 159 Ill.2d 567, 207 Ill.Dec. 516, 647 N.E.2d 1009 (1995). AMS argues that remand would "render[] federal preemption under the MDA a nullity" by permitting state courts to "side with *Haudrich*" and hold that the MDA does not preempt medical devices claims (Mem. in Opp. to Mot. for Remand at 14). This argument is inapposite. Even if we agreed with AMS that the federal appellate courts are right and the *Haud-*

*rich* court is wrong, we could not assume that the Circuit Court of Cook County would make the same mistake. And even if we did make that assumption, we would not deny remand on that basis. In reviewing a motion for remand, we can consider only whether we have jurisdiction. We therefore decline AMS' invitation to inquire whether the plaintiff's particular claims are preempted. *See Green*, 1995 WL 215045 at *2 (expressing "no substantive views" on the defendant's preemption argument); *Goldstein*, 887 F.Supp. at 171–72 (same). It follows that our decision here does not preclude AMS from making its preemption argument in state court. We rule only that the case cannot be removed and take no position on the merits of preemption as a defense to McQuerry's claims.