**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 10/4/96**

**TENTH CIRCUIT**

_____

| | |
|---|---|
| CURTIS SCHMELING, an individual, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 95-5184 |
| | ) |
| NORDAM, a corporation, | ) |
| | ) |
| Defendant-Appellee. | ) |

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(No. 95-C-143-BU)**

_____

Thomas L. Bright, Tulsa, Oklahoma, for Plaintiff-Appellant.

D. Kevin Ikenberry (Stephen L. Andrew with him on the brief), of Stephen L. Andrew & Associates, Tulsa, Oklahoma, for Defendant-Appellee.

_____

**Before KELLY, ENGEL,* and LOGAN, Circuit Judges.**

_____

**ENGEL, Circuit Judge.**

_____

_____

* The Honorable Albert J. Engel, United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

Plaintiff Curtis Schmeling appeals the district court's grant of summary judgment to defendant NORDAM, a corporation, in Schmeling's suit following the termination of his employment with NORDAM. NORDAM is an air repair station, certified by the Federal Aviation Administration (FAA), that contracts with commercial airlines to manufacture and perform maintenance work on aircraft parts. Schmeling sued in Oklahoma state court, and NORDAM removed the case to federal district court. Because we conclude that federal courts do not have subject-matter jurisdiction over Schmeling's suit, we vacate the judgment of the district court and remand the case with instructions to remand to the state court.

I.

In September 1994, NORDAM subjected Schmeling to a drug test pursuant to its drug-testing plan, which was approved by the FAA. Schmeling tested positive and entered a rehabilitation program. The next month, after completing the program, he took another test and tested negative. Within three weeks, NORDAM fired Schmeling. Schmeling alleges that he was terminated in part, at least, because of the positive drug test; NORDAM counters that its reason for letting Schmeling go was his abusive treatment of one of NORDAM's secretaries.

Schmeling alleges three separate causes of action stemming from his termination. His first claim is that NORDAM intentionally violated Oklahoma's Standards for Workplace Drug and Alcohol Testing Act ("the Oklahoma Act"), Okla. Stat. tit. 40, §§ 551-565.

2

Schmeling does not specify what section of the Oklahoma Act NORDAM violated, but we infer that he has based his claim on section 562, which provides that

> [n]o disciplinary action, except for a temporary suspension or a temporary transfer to another position, may be taken by an employer against an employee based on a positive test result unless the test result has been confirmed by a second test . . . .

*Id.* § 562(A). Section 563 of the Act allows any person aggrieved by a willful violation of the Act to bring a civil action seeking legal and equitable remedies such as compensatory damages and reinstatement. Schmeling's second claim is that NORDAM's violation of the Oklahoma Act was against Oklahoma public policy and therefore within an exception to Oklahoma's at-will employment rule. Although generally in Oklahoma an employer may legally discharge an employee without good cause, *Singh v. Cities Serv. Oil Co.*, 554 P.2d 1367, 1369 (Okla. 1976), the state recognizes the termination of an at-will employee in violation of "a clear mandate of public policy as articulated by constitutional, statutory or decisional law" as a tortious breach of contractual obligations. *Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989). Schmeling's third claim is that NORDAM's violation of the Oklahoma Act constituted an intentional infliction of emotional distress.

Schmeling filed suit in Oklahoma state court, and NORDAM timely removed the case to federal district court. Although Schmeling did not raise any federal questions in his complaint, NORDAM based removal on the "complete preemption" doctrine, arguing that "[t]he complete pre-emption of Oklahoma law relating to drug testing of the Plaintiff renders his claim, from its inception, a claim arising under federal law." According to NORDAM,

3

the Oklahoma Act is preempted by the FAA regulations covering the drug-testing of aviation employees, 14 C.F.R. Parts 121 and 135, which were promulgated under 49 U.S.C. § 45102.

After removing the case, NORDAM moved to dismiss Schmeling's suit on the grounds that Schmeling could not bring a private action to enforce the FAA regulations. Schmeling answered that the case should be remanded to state court because the Oklahoma Act was not preempted. In the event that he lost this argument, Schmeling moved for leave to amend his complaint so that he could allege a violation of the FAA regulations. The district court treated NORDAM's motion as one for summary judgment and granted the motion, holding that the Oklahoma Act as applied to workers in the aviation industry was preempted by the FAA regulations. The court further held that Schmeling did not have standing to bring a private action to enforce the FAA regulations, and it denied Schmeling's motion for leave to amend his complaint as moot.

## II.

Schmeling argues on appeal that under the standard established in *English v. General Electric Co.*, 496 U.S. 72 (1990), which held that the extent of federal preemption is a function of congressional intent, the Oklahoma Act is not preempted by federal law. NORDAM counters that 49 U.S.C. § 45106(a) and 14 C.F.R. § 121, App. I, ¶ XI(A) evince legislative and executive intent to preempt state laws such as the Oklahoma Act. Both parties have proceeded under the assumption that the propriety of NORDAM's removal hinges only

4

on whether federal law preempts the Oklahoma Act. Removal based on "complete" preemption, however, rests on a legal inquiry that is separate from an assessment of the merits of a defendant's "ordinary" preemption defense, although there is significant overlap between the two inquiries. 14A Charles A. Wright et al., Federal Practice and Procedure § 3722, at 71 (2d ed. Supp. 1996). Before considering whether NORDAM's ordinary preemption argument constitutes a valid defense to Schmeling's three claims, we must decide whether, under the complete preemption doctrine, this case was properly removed to federal court.[1]

A.      *The Complete Preemption Doctrine*

Under the removal statute,

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . .

28 U.S.C. § 1441(a). Because the parties to this suit are not diverse in their citizenship, federal courts have original jurisdiction only if the suit raises a federal question, that is, if the

---

[1]The district court did not directly address this issue; nor did the parties in their briefs on appeal, other than a short statement by NORDAM. Regardless of whether a jurisdictional issue has been properly raised, however, we must be careful not to exceed the statutory scope of our jurisdiction. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). In certain circumstances, we might request additional briefing before deciding a jurisdictional question not squarely raised by the parties, but in this case, we see no need to do so. The parties have acknowledged that without federal preemption, there is no federal jurisdiction. What they have not discussed is merely the scope of the "complete preemption" doctrine. In light of extensive Supreme Court case law in this area, we are not hampered by a lack of briefing.

suit is an action "arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331.

In deciding whether Schmeling's suit arises under federal law, we are guided generally by the "well-pleaded complaint" rule, under which a suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based" on federal law. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). The plaintiff's anticipation of a defense based on federal law is not enough to make the case "arise under" federal law. *Id.* Nor is a defendant's assertion of a defense based on federal law, such as the federal preemption of the state law on which a plaintiff's claim is based, a proper basis for removal, *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987), even if both parties agree that the only issue for decision in a case is the validity of a federal preemption defense, *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12 (1983). The plaintiff is the "master of the claim" and may prevent removal by choosing not to plead a federal claim even if one is available. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the "artful pleading" doctrine, however, a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim. *Franchise Tax Bd.*, 463 U.S. at 22. Similarly, removal is permitted when the plaintiff's right to relief requires resolution of a substantial question of federal law. *Id.* at 13.

The "complete preemption" doctrine has been referred to as a corollary, *Caterpillar*, 482 U.S. at 393, or an exception, *Oklahoma ex rel. Oklahoma Tax Comm'n v. Wyandotte*

6

*Tribe*, 919 F.2d 1449, 1450 (10th Cir. 1990), *cert. denied*, 501 U.S. 1219 (1991), to the well-pleaded complaint rule. When the doctrine is properly invoked, a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim "necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63-64. Unfortunately, the scope of the doctrine is not entirely clear; "[t]he evolution of the doctrine . . . has been one of fits-and-starts and zig-zags [and] has, not surprisingly, occasioned both confusion and disagreement among the federal circuit and district courts." *Burke v. Northwest Airlines, Inc.*, 819 F. Supp. 1352, 1356 (E.D. Mich. 1993). By no means does every federal preemption defense invoke the doctrine; our task is to determine whether NORDAM's reliance on the doctrine in this case was appropriate. With this in mind, we examine the relevant Supreme Court cases.

In *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968), the plaintiff corporation sued in state court to enjoin the defendant union from striking. The suit asserted a state law breach of contract claim based on a no-strike provision in a collective bargaining agreement. The defendant removed to federal court. The Supreme Court held that the suit was properly removed because it arose under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which grants federal jurisdiction over suits for violation of collective bargaining agreements. *Avco*, 390 U.S. at 560. Furthermore, the Court added, previous decisions had established that any case arising under section 301 is controlled by federal substantive law, even if tried in state court. *Id.*

7

The *Avco* Court did not purport to announce a new rule and did not even mention the word "preempt." *Avco* has been considered the birth of the complete preemption doctrine, however, largely because of the Supreme Court's later characterization of the case:

> The necessary ground of decision was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

*Franchise Tax Bd.*, 463 U.S. at 23-24 (quoting 29 U.S.C. § 185(a)) (footnote omitted). In *Franchise Tax Board*, the Court considered whether federal courts had jurisdiction over a case filed in state court by a state tax agency against the administrator of a trust fund regulated by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The agency sought to collect taxes that were due and also requested a declaratory judgment that section 514 of ERISA, 29 U.S.C. § 1144, did not preempt the agency's authority to collect money from the trust.

The Court considered whether removal was proper under *Avco*. The defendant trust administrator argued that it was because the preemptive effect of ERISA is similar to that of the LMRA. The Court rejected this argument, finding that whereas section 301 of the LMRA creates a cause of action under which the plaintiff corporation in *Avco* could enforce the LMRA in federal court, the parallel provision of ERISA, section 502(a), does not create a federal cause of action in favor of state governments. *Franchise Tax Bd.*, 463 U.S. at 24-

8

25.  The Court further distinguished *Avco* on the grounds that "[u]nlike the contract rights at issue in *Avco*, the State's right to enforce its tax levies is not of central concern to [ERISA]." *Id.* at 25-26.

Four years later, the Supreme Court addressed a question left open in *Franchise Tax Board*, *id.* at 24:  whether a state law claim that falls within the scope of section 502(a) of ERISA is removable to federal court.  *Metropolitan Life*, 481 U.S. at 64.  In *Metropolitan Life*, the Court considered whether the defendant employer properly removed a suit brought by a former employee alleging breach of contract and wrongful termination.  The Court found that the plaintiff's state claims were preempted by ERISA but noted that under the well-pleaded complaint rule, federal preemption is a defense and generally does not authorize removal.  *Id.* at 63. Citing  *Avco* and *Franchise Tax Board*, the Court articulated the emerging "corollary" to the rule as follows:  "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63-64.

Noting that "the *Avco* principle" had theretofore been limited to cases involving section 301 of the LMRA, *id.* at 64, the *Metropolitan Life* Court reluctantly extended the principle to allow the removal of state actions within the scope of section 502(a) of ERISA. It stressed that ERISA preemption alone was insufficient to recharacterize the plaintiff's claim as federal.  Furthermore, it noted that even the presence of a federal cause of action in the preemptive federal statute was not necessarily enough to invoke the "extraordinary pre-

9

emptive power" that converts state claims into federal ones. What convinced the Court to allow removal was the similarity between the jurisdictional subsection of section 502 of ERISA and section 301(a) of the LMRA. The Court's conclusion was bolstered by the legislative history of the ERISA provision, which explicitly manifests an intent to treat ERISA cases the same as LMRA cases with respect to removal. *Id.* at 65-66. The Court summarized its application of the *Avco* doctrine as follows:

> [T]he touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court.

*Id.* at 66. In a concurring opinion, Justice Brennan elaborated,

> [O]ur decision should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to pre-empt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action . . . *removable to federal court*." *Ibid.* (emphasis added). In future cases involving other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court.

*Id.* at 67-68 (Brennan, J., concurring).

Two months after *Metropolitan Life*, Justice Brennan authored another opinion that discussed the complete preemption doctrine. In *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), former employees sued their former employer for breach of individual employment contracts. The employer removed to federal court under *Avco*. The Supreme Court held that

10

removal was improper because assessment of the plaintiffs' claims did not require an interpretation of a collective bargaining agreement governed by section 301 of the LMRA. *Id.* at 396-97.

The holding in *Caterpillar* broke no new ground, but the Court's discussion of the "complete preemption" doctrine--its first reference to the doctrine under this name--strayed from the narrow path set out in *Metropolitan Life*. Citing *Franchise Tax Board*, the Court wrote that "[o]nce an *area* of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393 (emphasis added). This language represented a departure in that it referred to the complete preemption of an *area* of state law as a proper basis for removal, whereas the *Franchise Tax Board* Court, as quoted in support by the *Caterpillar* Court, had noted merely that under *Avco*, removal could be based on the complete preemption of a state *cause of action*. 463 U.S. at 23-24. By focusing on the preemption of an area of state law rather than the preemption by a federal cause of action of a state cause of action, *Caterpillar* neglected the emphasis in the previous cases on whether the preemptive federal law provided a cause of action on which the plaintiff could base a claim. Indeed, the *Franchise Tax Board* Court held that removal was improper because the plaintiff state agency did not have a federal cause of action under ERISA. 463 U.S. at 24-25. Moreover, the *Metropolitan Life* Court found removal to be appropriate not because of the "unique pre-emptive force of ERISA," *id.* at 65, but rather because section 502, the civil

11

enforcement provision, manifested Congress's intent to make actions such as the plaintiff's removable, *id.* at 65-66. *Avco* itself, furthermore, rested on a finding that the state cause of action was preempted by the provision of a federal cause of action in section 301 of the LMRA.

NORDAM interprets *Caterpillar* as supporting the proposition that any time a valid defense of federal preemption is raised, a defendant may remove to federal court--a proposition rejected in *Metropolitan Life* . Although we recognize that *Caterpillar*, read alone, is susceptible to such an interpretation, we find, in light of *Avco*, *Franchise Tax Board*, and *Metropolitan Life*, that the Supreme Court did not intend the doctrine to be interpreted in that way. *See Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 310 (3d Cir. 1994) (rejecting the interpretation urged by NORDAM), *cert. denied*, 115 S. Ct. 1691 (1995); *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1165 (5th Cir. 1989) (same), *cert. denied*, 493 U.S. 1074 (1990); *McQuerry v. American Medical Sys., Inc.*, 899 F. Supp. 366, 369-70 (N.D. Ill. 1995) (discussing how logic dictates against interpretation urged by NORDAM). We do not read *Caterpillar* as derogating the statement in *Metropolitan Life* that "the touchstone of the federal district court's removal jurisdiction is . . . the intent of Congress." 481 U.S. at 66. The *Caterpillar* Court purported merely to apply the complete preemption doctrine, not to amend it. We see no reason to find that Justice Brennan's opinion intended to veer from the course set by the opinion he authored in *Franchise Tax Board* and by his caution in *Metropolitan Life* that absent "clear congressional intent to create removal

jurisdiction," the "prudent" approach is to remand to state court. *Id.* at 67 (Brennan, J., concurring).

Lower courts have applied different versions of the complete preemption doctrine. One commentator has identified two distinct interpretations of the doctrine: the "complete preemption" model and the "replacement preemption" model. Robert A. Ragazzo, *Reconsidering the Artful Pleading Doctrine*, 44 Hastings L.J. 273, 280-88 (1993); *see McQuerry*, 899 F. Supp. at 369 ("Supreme Court precedent on the issue of `jurisdiction by preemption' admits of two readings."). Under the "complete preemption" model, courts focus on the merits of a preemption defense--the degree to which federal law preempts state law--without considering whether federal law provides a cause of action. *E.g.*, *McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 15 n.1 (1st Cir. 1991), *cert. denied*, 504 U.S. 910 (1992). Under the "replacement preemption" model, courts permit removal only if congressional intent to allow removal is manifested by the replacement of the state law cause of action with a federal cause of action. *E.g.*, *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 942 (3d Cir. 1988). Courts have tended to favor results consistent with the replacement preemption model, although they have rarely addressed the conflict between the two interpretations. *See* Ragazzo, *supra*, at 295.

The tension in the Supreme Court cases can be resolved by reading "complete preemption" as a term of art. We read the term not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description

13

of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal. This reading is supported by the Supreme Court's original use of the term. Although *Caterpillar* was the first case in which the Court used the phrase "complete pre-emption," the *Franchise Tax Board* Court used variations of these words together, writing that removal was proper "if a federal cause of action completely preempts a state cause of action." 463 U.S. at 24. This usage reveals that "complete preemption" refers to the replacement of a state cause of action with a federal one. With this understanding of "complete preemption," we see nothing in *Caterpillar* that modifies the requirement established in the earlier cases that a federal cause of action be available. *See* Erwin Chemerinsky, *Federal Jurisdiction* § 5.2.3, at 267 ("[I]t appears that a state court suit is removable to federal court based on a claim of preemption if Congress created a cause of action in the allegedly preemptive statute.") (2d ed. 1994).

Before today, this court had not affirmatively resolved which interpretation to follow. In *Oklahoma ex rel. Oklahoma Tax Commission v. Wyandotte Tribe*, 919 F.2d 1449 (10th Cir. 1990), *cert. denied*, 501 U.S. 1219 (1991), we quoted a Supreme Court statement consistent with the "complete preemption" model: "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 1450 (quoting *Metropolitan Life*, 481 U.S. at 63-64). In *Carland v. Metropolitan Life Insurance Co.*, 935 F.2d 1114 (10th Cir.), *cert. denied*, 502 U.S. 1020

14

(1991), although we quoted the same statement, our conclusion that "[a] state law claim will convert to a federal claim only if the claim is preempted by ERISA and within the scope of ERISA's civil enforcement provisions" was consistent with the "replacement preemption" model. *Id.* at 1119. In deciding that removal based on preemption is permissible only if federal law provides a replacement cause of action, we extend *Carland* beyond the confines of ERISA.

We do not hold that a federal cause of action must provide the same remedies as offered by the preempted state cause of action. *Avco* held that the chance that the "nature of the relief" available under federal law might be different from that under state law does not affect the jurisdictional analysis. 390 U.S. at 561. In *Caterpillar*, the Ninth Circuit had stated that "[a] state law cause of action has been `completely preempted' when federal law both displaces *and* supplants the state law--that is, when federal law provides both a superseding remedy replacing the state law cause of action *and* preempts that state law cause of action." *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 932 (9th Cir. 1986). Rightly or wrongly, the Supreme Court read the "superseding remedy" language as contrary to *Avco*'s holding that the nature of the relief available is irrelevant to the jurisdictional question. 482 U.S. at 391 n.4; *see* Ragazzo, *supra*, at 295 ("[T]he *Caterpillar* Court seemed to misapprehend the Ninth Circuit's exposition of the replacement preemption model."). We therefore clarify that although a federal cause of action is a prerequisite to removal under the

15

complete preemption doctrine, the federal cause of action need not provide the same remedy as the state cause of action.

*B.*         *Application of the Complete Preemption Doctrine*

Deciding whether removal in this case was proper under the complete preemption doctrine requires a two-part analysis: first, whether, as NORDAM alleges, the FAA regulations preempt the state laws relied on by Schmeling--namely, the Oklahoma Act and Oklahoma common law on the intentional infliction of emotional distress and on the public policy exception to the employment-at-will rule; and second, whether Congress intended to allow removal in such cases, as manifested by the provision of a federal cause of action to enforce the FAA regulations.

For reasons of comity and prudence, we first undertake the second inquiry, which potentially has less relevance to the merits of the case than does the first inquiry. Our analysis under the complete preemption doctrine is jurisdictional and therefore preliminary to any consideration of the merits. *See First Fed. Sav. & Loan Ass'n v. Detroit Bond & Mortgage Inv. Co.*, 687 F.2d 143, 145 (6th Cir. 1982) ("The jurisdiction issue must be affirmatively resolved before the merits of the preemption issue can be reached . . . ."). We choose to avoid, if possible, the awkwardness of simultaneously (1) holding that we lack jurisdiction and (2) commenting on the merits of the preemption defense. *See First Fed. Sav. & Loan Ass'n*, 687 F.2d at 146 (Weick, J., dissenting) ("To hold that federal courts under these circumstances are powerless to enforce compliance with federal law borders on being

16

ridiculous."). We further seek to avoid the unseemly encroachment on the province of the state courts that would result from such a posture. Congress has the authority to grant federal jurisdiction in cases when a federal question arises only in a defense; indeed, before 1887, federal courts had such jurisdiction. *Railroad Co. v. Mississippi*, 102 U.S. 135, 140 (1880); *see* Act of Mar. 3, 1887, ch. 373, 24 Stat. 552, *amended by* Act of Aug. 13, 1888, ch. 866, 25 Stat. 433. In determining that federal courts do not have jurisdiction in certain cases, Congress has deemed that state courts should evaluate whatever federal questions might arise in such cases.

In arguing that he has a private cause of action to enforce the FAA regulations, Schmeling relies on the four factors set out in *Cort v. Ash*, 422 U.S. 66 (1975), to determine whether a private right of action under a certain federal law exists: (1) whether the plaintiff is one for whose benefit the statute was enacted; (2) whether there is evidence of legislative intent, explicit or implicit, to create or deny a private remedy; (3) whether the existence of a private right of action would be consistent with the underlying legislative purpose of the statute; and (4) whether the cause of action is in an area traditionally left to state law. *Id.* at 78. Since *Cort*, however, the Supreme Court has refined this inquiry. *Miller v. United States*, 710 F.2d 656, 667 (10th Cir.), *cert. denied*, 464 U.S. 939 (1983). The four-factor analysis has in effect been condensed into factor (2)--whether Congress, expressly or by implication, intended to create a private cause of action. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575

(1979); *see also Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) ("[W]e effectively overruled the *Cort v. Ash* analysis in *Touche Ross* [and *Transamerica*], converting one of its four factors (congressional intent) into *the determinative factor*."). The other *Cort* factors are relevant insofar as they assist in determining congressional intent. *Touche Ross*, 442 U.S. at 575-76.

Because there is no direct expression by Congress of an intent to provide a private cause of action to a plaintiff in Schmeling's situation--no federal counterpart to section 563 of the Oklahoma Act--Schmeling relies on congressional findings noting that the FAA drug-testing laws are meant in part to benefit aviation employees. These findings show that Congress wanted to protect "an individual's right of privacy" and to ensure that "no individual is harassed by being treated differently from other individuals," but they do not show that Congress intended employees to have a private right of action to enforce the drug-testing laws. Department of Transportation and Related Agencies Appropriations Act, 1992, Pub. L. No. 102-143, § 2, 105 Stat. 917, 955-56. Schmeling also cites a regulation providing that information related to a drug test shall be disclosed to relevant parties if an employee is involved in a lawsuit arising from a positive drug test. 49 C.F.R. § 40.35. This regulation does not, however, manifest congressional intent to create a private right of action. *See Salomon v. Roche Compuchem Lab., Inc.*, 909 F. Supp. 126, 127-28 (E.D.N.Y. 1995) (holding that plaintiff had no private right of action to enforce 49 C.F.R. § 40.37, which provides that employees have access to records relating to their drug tests).

Congressional intent as to who has the power to enforce the drug-testing laws is clear in 49 U.S.C. §§ 46106-46108. Section 46106 provides that the FAA Administrator may bring a civil action to enforce the laws. Section 46107(b) allows the United States Attorney General to bring a such an action at the request of the FAA Administrator. Schmeling interprets § 46108 as allowing enforcement of all FAA regulations by an "interested person," but the statute clearly limits such actions to those enforcing § 41101(a)(1), which requires air carriers to hold FAA certificates. Schmeling seeks to enforce not this certificate requirement, but rather the drug-testing laws. Nowhere has Congress manifested an intent to allow a person other than the FAA Administrator or the Attorney General to enforce the drug-testing laws. The statutory construction principle of *expressio unius est exclusio alterius* is not conclusive; it is possible for Congress to create certain rights of action expressly and others impliedly within the same statute. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 n.23 (1983); *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974). Still, we find no evidence that Congress intended to create the right of action asserted by Schmeling, and we conclude that such a right does not exist.

Because Congress has neither expressly nor impliedly provided Schmeling with a federal cause of action to enforce the FAA drug-testing laws, we follow the "prudent course" advised by Justice Brennan and hold that Schmeling's suit is not subject to removal under the complete preemption doctrine. Schmeling perhaps could have chosen to base his complaint

19

on federal law, but as the master of his claim, he chose not to do so.[2]  Were we to read the complete preemption doctrine as requiring only a certain degree of ordinary preemption, rather than the replacement of a state cause of action, we might or might not hold that removal was proper.  In light of our contrary interpretation of the doctrine and our holding that Schmeling does not have a federal cause of action, however, we need not reach the merits of NORDAM's preemption defense and leave this issue for the state court to decide. *See Franchise Tax Bd.*, 463 U.S. at 7, 26.  If the state court holds that the Oklahoma Act is preempted by federal law, it may need to consider whether Schmeling has a private right of action under federal law.  We express no opinion as to the effect of our answer to this question in any later proceedings in state court. *Compare Whitman v. Raley's Inc.*, 886 F.2d 1177, 1182 (9th Cir. 1989) (holding that when a federal court remands to state court for lack of federal jurisdiction, "no rulings of the federal court have any preclusive effect on the substantive matters before the state court") *with Kerbow v. Kerbow*, 421 F. Supp. 1253, 1260 (N.D. Tex. 1976) (holding that despite remand to state court for lack of federal jurisdiction, ruling that plaintiff lacked standing to sue under federal statute would have res judicata effect in state court).

---

[2]Schmeling's complaint is not an example of "artful pleading"; he does not seek to circumvent federal jurisdiction by omitting federal issues that are essential to his claims. Rather, he relies on legal grounds unique to state law, such as the tort of intentional infliction of emotional distress.  To hold that "complete preemption" exists under these circumstances would be to endow the federal legislation with a far broader reach than Congress intended.

## III.

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED to the district court with instructions to remand to the state court.