The CITY OF NEW ORLEANS By and Through the NEW ORLEANS AVIATION BOARD

v.

A PORTION OF SQUARE 205, AND SQUARE 209, KENNER, LOUISIANA, and Laurence Lambert.

Civ. A. No. 94-369.

United States District Court, E.D. Louisiana.

Sept. 12, 1994.

David J. Halpern, Arthur D. Dupre, Jr., Jerry W. Sullivan, Halpern & Daigle, Metairie, LA, for City of New Orleans By and Through New Orleans Aviation Bd.

Eric A. Holden, New Orleans, LA, for defendant, Robert G. Koehl.

### ORDER AND REASONS

MENTZ, District Judge.

The City of New Orleans ("New Orleans"), by and through its agent, the New Orleans Aviation Board ("NOAB"), commenced several expropriation actions in this court in order to acquire a fee simple interest in property located within the Runway Protection Zone ("RPZ") of the New Orleans International Airport ("airport"). The airport is located outside the geographical limits of New Orleans in the City of Kenner ("Kenner"), Jefferson Parish, Louisiana. Kenner filed suit in state court to enjoin the expropriation proceedings. New Orleans removed the injunction suit to this court. Before the Court are a motion to dismiss the expropriation suits for lack of subject matter jurisdiction, and Kenner's motion to remand its injunction suit for lack of subject matter jurisdiction. Having reviewed the parties' briefs and the applicable law, the Court **GRANTS** the motions for the reasons that follow.

### I. Facts

NOAB operates the airport, which is a commercial facility licensed and regulated by the Federal Aviation Administration (FAA). The property NOAB seeks to acquire is within the RPZ at the airport. The RPZ is an area defined by the FAA and required by FAA standards to be cleared of objects and activities incompatible with safe and efficient airport operation. *See* United States Department of Transportation, FAA Advisory Circular No. 150/5300–13 (June 5, 1991) at ¶ 211(a)(7) and ¶ 212. The properties at issue allegedly contain land uses not permitted by FAA standards for the RPZ.

In order to comply with the FAA regulations, NOAB made offers to acquire the properties with federal funds pursuant to the Uniform Relocation Assistance and Real Property Acquisition Act, 42 U.S.C. § 4601, et seq., but the owners refused to sell. Thereafter, NOAB decided to pursue expropriation proceedings.

Under the Louisiana statutes governing airport zoning, Louisiana Revised Statutes § 2:381 et seq., the political subdivision owning the airport may acquire an interest in real property by condemnation in order to provide the necessary approach protection. *See* La.Rev.Stat.Ann. § 2:389 (West 1988).[1] A municipality is authorized to expropriate property located outside its limits for a public purpose, but only with the consent of the police jury of the parish in which the property is situated. La.Rev.Stat.Ann. § 33:4621 (West 1988).[2] The method for acquisition is

---

1. Louisiana Revised Statute § 2:389 reads:

 § 389. Acquisition of air rights, servitudes, or other interests

 In any case in which: (1) it is desired to remove, lower, or otherwise terminate a nonconforming use; or (2) the necessary approach protection cannot, because of constitutional limitations, be provided by airport zoning regulations under this Chapter; or (3) it appears advisable that the necessary approach protection be provided by acquisition of property rights rather than by airport zoning regulations, the political subdivision within which the property or non-conforming use is located or the political subdivision owning the airport or served by it may acquire, by purchase, grant, or condemnation in the manner provided by the law under which the political subdivisions are authorized to acquire real property for public purposes, such an air right, servitude, or other estate or interest in the property or non-conforming use in question as may be necessary to effectuate the purposes of this Chapter.

2. Section 33:4621 reads:

 § 4621. Authority to acquire property

 Municipalities and parishes may expropriate and otherwise acquire any private property, within or without their limits, for any of the purposes for which they are organized, and for any works that they are authorized to own or operate, or which they are authorized to lease or donate to the United States. This Part shall not be construed to confer authority upon a parish or municipality to expropriate property in any other parish without the consent of the police jury of the parish in which the property is located.

found in the general laws providing for expropriation. *See* La.Rev.Stat.Ann. § 19.1, et seq. (West 1979 and West Supp.1994).

NOAB sought the consent of the Jefferson Parish Council and Kenner to expropriate the property in question.[3] Both local governments initially consented to the proposed expropriation, but both subsequently rescinded the resolutions granting consent.

In order to conform with the FAA guidelines for the RPZ, NOAB commenced expropriation proceedings in federal court. A few days later, Kenner filed suit in Jefferson Parish to enjoin the expropriation proceedings based on NOAB's failure to obtain consent. New Orleans and NOAB removed the injunction suit to this court on the ground of federal question jurisdiction.

## II. Federal Question Jurisdiction In the Expropriation Proceedings

### A.

Subject matter jurisdiction in these expropriation cases is predicated on federal question jurisdiction. The defendant property owners seek dismissal of these suits for lack of subject matter jurisdiction, contending that NOAB asserts only a state law cause of action.

■ Under 28 U.S.C. § 1331, federal district courts have original "federal question" jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a case "arises under" federal law is determined by reference to the plaintiff's complaint. "A district court's federal-question jurisdiction, ... extends over 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law,' *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983), in that

'federal law is a necessary element of one of the well-pleaded ... claims,' *id.,* at 13, 103 S.Ct. at 2848." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 2173–74, 100 L.Ed.2d 811 (1988). If the plaintiff's complaint alleges such a claim, it is within the jurisdiction of the court, regardless of the ultimate merits of the claim, unless the claim is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court." *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974).

■ NOAB states in its complaints that this Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 pursuant to the Federal Aviation Act of 1958, 49 U.S.C. § 1301, et seq., the "Airport and Airway Development Act of 1970, [sic] 49 U.S.C. app. § 2201, et seq.," and the U.S. Department of Transportation Federal Aviation Administration Advisory Circular No. 150/5300–13. NOAB further states that these federal statutory authorities together with Louisiana Revised Statutes Ann. § 2:1 et seq. and § 19.1 et seq., provide authority for the expropriation.

It is uncontested that federal law does not create NOAB's cause of action for expropriation. None of the federal laws cited in NOAB's complaint bestows a right to expropriate on a municipality. Indeed, NOAB admits in its brief that the authority to expropriate the property in this case is conferred by Louisiana law alone. NOAB's argument in support of jurisdiction is that the public purpose required by state law for expropriation is defined by federal law. Thus, jurisdiction rests on whether the federal aviation laws and regulations that NOAB contends furnish a public purpose are a necessary element of the claim for expropriation.

---

**3.** Although Kenner is not a parish governing authority whose consent to expropriation would be required under § 2:389, NOAB explains that it nevertheless sought Kenner's consent believing such was arguably required under La.Rev.Stat. Ann. § 2:131. Section 2:131 provides that municipalities may acquire, establish, construct, ex-

pand, own, lease, control, equip, improve, maintain, operate, regulate, and police airports outside of their own geographical limits, but may exercise this authority only jointly with an adjoining political subdivision. La.Rev.Stat.Ann. § 2:131 (West 1987).

NOAB contends that the public purpose for expropriation is the protection of navigable airspace and safety zones defined by federal law, and that the FAA in providing funding grants for the acquisition of the property "directed" and/or "advised" NOAB to obtain control and clear the area of incompatible uses.[4] NOAB cites 49 U.S.C. § 1301(29), which defines navigable airspace as "the minimum altitude of flight prescribed by regulations ... and shall include the airspace needed to ensure safety in takeoff and landing of airspace." NOAB also cites the FAA's June, 1991 Advisory Circular which contains the FAA's standards, recommendations, and guidelines for airport design, including the purpose of the RPZ, its dimensions, and the uses that are accepted and prohibited. In particular, the Advisory Circular provides:

> 211. *OBJECT CLEARING CRITERIA.* Safe and efficient operations at an airport require that certain areas on and near the airport be clear of objects or restricted to objects with a certain function, composition, and/or height.....
>
> . . . . .
>
> (a) *Standards.* Object clearance requirements are as follows:
>
> . . . . .
>
> (7) *Runway Protection Zone (RPZ).* The RPZ requires clearing of incompatible objects and activities as specified in paragraphs 212a(2) and 212a(4).
>
> 212. *RUNWAY PROTECTION ZONE (RPZ).* The RPZ's function is to enhance the protection of people and property on the ground. This is achieved through airport owner control over RPZ's. Such control includes clearing RPZ areas (and

maintaining them clear) of incompatible objects and activities. Control is preferably exercised through the acquisition of sufficient property interest in the RPZ.

. . . . .

> b. *Recommendations.* Where it is determined to be impracticable for the airport owner to acquire and plan the land uses within the entire RPZ, the RPZ land use standards have recommended status for that portion of the RPZ not controlled by the airport owner.

FAA Advisory Circular No. 150/5300–13 (June 5, 1991).

While the FAA's safety standards for the RPZ may be the impetus for the expropriation, and the funding grant may obligate NOAB to acquire the RPZ properties, NOAB's claim for expropriation does not necessarily depend on resolution of any federal law. This case involves the exercise of the power of eminent domain under the laws of Louisiana. A municipality's exercise of its power of eminent domain has traditionally been associated with the sovereign characteristics of a state. *See Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 26, 79 S.Ct. 1070, 1071, 3 L.Ed.2d 1058 (1959); *Creel v. City of Atlanta,* 399 F.2d 777, 779 (5th Cir.1968).

Louisiana has declared for what local public purposes private property within its limits may be taken for airport use. Louisiana statutes define "public purpose" for airport zoning. Section 2:608 specifically provides that the acquisition of land to eliminate airport hazards is a public function, exercised for a public purpose, and a matter of public necessity. La.Rev.Stat.Ann. § 2:608 (West 1989).[5] It also provides that land acquired

---

**4.** The language quoted is from NOAB's brief. The record is not established as to whether the FAA requested, directed, advised, or recommended that NOAB acquire the RPZ property, and whether the FAA made its grant conditional on the acquisition. The parties did not provide the Court with a copy of the funding grant.

**5.** Section 2:608 provides:
§ 608. Public Purpose
The acquisition of any land, or interest therein, pursuant to this Chapter, the planning, acquisition, establishment, development, con-

struction, improvements, maintenance, equipment, operation, regulation, and protection of airports and air navigation facilities, including the acquisition or elimination of airport hazards, and the exercise of any other powers herein granted to authorities and other public agencies, to be severally and jointly exercised, are hereby declared to be public and governmental functions, exercised for a public purpose, and matters of public necessity. All land and other property and privileges acquired and used by or on behalf of any authority or other public agency in the manner and for the pur-

for other purposes enumerated in the Chapter on airport zoning is acquired for public purposes. Section 2:389 authorizes the political subdivision owning the airport to acquire property by condemnation to provide the necessary approach protection. *See supra,* n. 1. Pursuant to Sections 2:132 and 2:131(B), any lands acquired by a city to control, improve, maintain, operate, regulate, and police airports and landing fields for the use of aircraft is acquired for public purposes. La.Rev.Stat.Ann. §§ 2:131(B) and 132 (West 1987).[6] Thus, while reference to FAA regulations to establish a public purpose may be helpful to NOAB's claim for expropriation, NOAB's right to expropriate does not necessarily depend on any federal law or regulation. State law is sufficient to provide NOAB with the relief it seeks.

NOAB suggests that federal question jurisdiction exits by virtue of federal preemption of the local laws requiring approval to condemn property. This argument fails because there is no claim in these expropriation cases that depends on federal preemption. For this reason, *City of New Orleans v. City of Kenner,* 971 F.2d 748, (5th Cir.1992), cited by NOAB, is inapplicable to the expropriation suits. In *City of New Orleans,* New Orleans brought suit in federal court pursuant to the Supremacy Clause of the United States Constitution to displace and preempt local regulations requiring NOAB to apply for building permits to expand airport facilities. The Fifth Circuit found that NOAB's claim of violation of the Supremacy Clause stated a colorable claim of federal question jurisdiction. In the case at bar, NOAB brought suit to expropriate property pursuant to state laws. That NOAB raises the issue of preemption in these suits in anticipation of a defense that it failed to obtain consent does not confer federal question jurisdiction. Under the well-pleaded complaint rule, whether a claim "arises under" federal law for pur-

poses of federal question jurisdiction "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. at 2846 (quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914)).

### B.

■ NOAB asserts that because federal funds are the funding source of the expropriation, NOAB is an agent of the FAA and entitled to a federal forum, citing the Uniform Relocation Assistance and Real Property Acquisition Act (URA), 42 U.S.C. § 4628. Under Section 4628, whenever property is acquired by a state agency at the request of a federal agency for a federal program, the acquisition is deemed an acquisition by the federal agency.

Section 4628 does not apply. There is no claim that NOAB is seeking expropriation on behalf of the FAA for a program or project undertaken by the FAA. What has been alleged is that NOAB is seeking to comply with federal safety regulations for the RPZ, and that the funding for the acquisition is conditioned on compliance with federal laws governing the RPZ. These allegations do not bring NOAB's attempt to expropriate within the scope of Section 4628.

That federal funds would be used pursuant to the URA to compensate the property owners does not establish a claim arising under the URA because that fact has no bearing on NOAB's right to expropriate. State law provides the method for estimating the value of the property to be expropriated by a municipality. *See* La.Rev.Stat.Ann. § 19:110 (West 1979 and West Supp.1994).

---

poses enumerated in this Chapter shall and are hereby declared to be acquired and used for public and governmental purposes and as a matter of public necessity.

6. Section 2:132 provides in pertinent part:
§ 132. Airports a public purpose
 A. Any lands acquired, owned, leased, controlled, or occupied by such cities, towns, or other political subdivisions for the purposes enumerated in R.S. 2:131 are acquired, owned, leased, controlled, or occupied for public, governmental, and municipal purposes.
 Section 2:131(B) provides in pertinent part:
 B. Cities, ... may control, ... improve, maintain, operate, regulate, and police, airports and landing fields for the use of aircraft.

Further, the expropriation cases before this Court do not involve claims by property owners for relocation assistance under the URA, or any other type of claim under the URA. The cases cited by NOAB, *Mountain States Tel. & Tel. Co. v. Boise Redevelopment Agency*, 101 Idaho 30, 607 P.2d 1084 (1980), and *Hernandez v. City of Phoenix*, 130 Ariz. 566, 637 P.2d 1069 (1981), are inapplicable because those cases involved claims asserted under the URA. NOAB's right to expropriate is not necessarily dependent on any interpretation of the URA.

### C.

NOAB's complaint does not advance a plausible claim that arises under federal law. There is no federal controversy involved in these municipal expropriation proceedings. *See Town of Stratford v. City of Bridgeport*, 434 F.Supp. 712, 713 (D.Conn.1977) (state law condemnation proceeding did not arise under federal law, notwithstanding claim that federal aviation regulations applied, federal financial aid was at issue, and federal regulation of air commerce preempted state and local regulations).

### III. Federal Question Jurisdiction in the Injunction Suit

■ Kenner filed an action in the 24th Judicial District Court for the Parish of Jefferson seeking to enjoin NOAB from expropriating any of the RPZ properties on the ground that the Parish of Jefferson did not grant consent for the expropriation. New Orleans and NOAB timely removed the case to this court under 28 U.S.C. §§ 1441 and 1331 alleging that Kenner's suit is a civil action founded on a claim or right arising under federal law, specifically the Federal Aviation Act of 1958, 49 U.S.C. § 1301, et seq., the Airport and Airway Development Act of 1970, 49 U.S.C.App. § 2201, et seq., and the U.S. Department of Transportation Federal Aviation Administration Advisory Circular No. 150/5300–13. Kenner filed a motion to remand the action to state court on the ground that this Court lacks subject matter jurisdiction. Kenner argues that whether it is entitled to an injunction depends solely on state law. Kenner also seeks to recover all costs and attorney fees incurred

as a result of the removal as provided by 28 U.S.C. § 1447(c).

■ An action brought in state court may be removed to federal court on the ground of federal question jurisdiction if it is a "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b). Under the well-pleaded complaint rule, a federal claim must appear on the face of the complaint in order to establish federal question jurisdiction for removal purposes. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "[F]ederal preemption is generally a defensive issue that does not authorize removal of a case to federal court." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir.1988). A narrow exception to this rule creates federal question jurisdiction where there is manifest congressional intent to make the preempted state claim removable. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Aaron v. Nat'l Union Fire Ins. Co.*, 876 F.2d 1157 (5th Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990); *Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir.1988). It is not sufficient to allege or even show, as NOAB has attempted, that an area is completely preempted by federal law. *See Willy*, 855 F.2d at 1166–67.

There are few federal statutes with the preemptive power to convert a state action into one stating a federal claim for purposes of establishing federal removal jurisdiction, but two examples are § 502(f) of Employee Retirement Income Security Act (ERISA) and § 301(a) of the Labor Management Relations Act (LMRA). *See Metropolitan Life*, 481 U.S. at 64–66, 107 S.Ct. at 1547–48 (discussing ERISA); *Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists*, 390 U.S. 557, 559, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968) (discussing LMRA). In both of these laws Congress included specific provisions which manifest congressional intent that certain types of actions be deemed to have arisen under federal law. Section 502(f) of ERISA provides:

The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

29 U.S.C. § 1132(f). Similarly, Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

NOAB has cited no specific jurisdictional grant that would confer removal jurisdiction in this case. Regardless of whether Kenner's injunction suit is preempted by federal law,[7] there is no removal jurisdiction in this case because Congress has not clearly manifested an intent to make a state law claim for an injunction against expropriation proceedings commenced to comply with FAA regulations an action arising under the laws of the United States. There being no federal laws at issue in this case that indicate a manifest intent to make a preempted state law claim removable to federal court, there is no authority for removal jurisdiction and the case must be remanded.[8]

Accordingly,

IT IS ORDERED that:

1) The Motion to Dismiss for Lack of Subject Matter Jurisdiction filed on behalf of Robert G. Koehl is **GRANTED,** dismissing without prejudice the expropriation suits pending before this Court: Civil Action Nos. 94–369, 94–399, 94–401, 94–402, 94–404, 94–581, 94–582, 94–583, 94–585, and 94–586.

2) The Motion to Remand on Ground of Lack of Federal Question filed on behalf of the City of Kenner is **GRANTED,** remanding Civil Action No. 94–777 to the Twenty-fourth Judicial District Court for Jefferson Parish, State of Louisiana. Kenner's request for costs and attorney fees under 28 U.S.C. § 1447(c) is **DENIED.**

---

**7.** State law is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California v. ARC America Corp.,* 490 U.S. 93, 100, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). In the case at bar, state laws authorizing a local political body to withhold consent to and state action enjoining expropriation proceedings commenced to comply with FAA safety regulations arguably infringe upon federal objectives for safe transit of navigable airspace.

**8.** NOAB urged in its memorandum in opposition to Kenner's motion to remand that Kenner lacks

standing to sue. If a plaintiff lacks standing, there is no case or controversy on which to base federal jurisdiction. *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 215, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974). As this suit was removed from state court, a finding that Kenner lacks standing would result in a remand, rather than dismissal. *See Wheeler v. Travelers Ins. Co.,* 22 F.3d 534, 539–40 (3rd Cir.1994). For this reason, the Court is perplexed as to why New Orleans and NOAB who are seeking to maintain federal jurisdiction would urge that Kenner lacks standing to sue. The issue of standing is moot in light of the finding that the case must be remanded for lack of jurisdiction.