ENVIRONMENTAL REMEDIATION HOLDING CORPORATION, derivatively by through Kevin Bartley, et al., Plaintiffs,

v.

TALISMAN CAPITAL OPPORTUNITY FUND, L.P., et al., Defendants.

Civil Action No. 00–N–0679.

United States District Court, D. Colorado.

April 13, 2000.

Luke Brennan, Luke A. Brennan, LLC, Grand Junction,CO, Daniel W. Packard, Packard & Packard, Beaumont, TX, for plaintiffs.

Rodger L. Wilson, Wilson & Fennelly, LLC, Denver, CO, Andrew R. Lee, New Orleans, LA, for defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

SCHLATTER, United States Magistrate Judge.

### I. INTRODUCTION

This case was filed in state district court in Denver, Colorado, and was removed to federal court by defendants. Plaintiffs have filed a Motion to Remand. In their motion, plaintiffs challenge the assertions by the defendants that this case arises under the laws of the United States or involves a federal question.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B), District Court Judge Edward W. Nottingham has referred all motions to me for recommendations or rulings, depending upon whether the motions request dispositive or non-dispositive relief. A motion to remand does not request relief which is dispositive in nature, and a ruling upon a motion to remand does not determine the ultimate disposition of the claims of the parties. Therefore, I resolve plaintiffs' Motion to Remand by Order, and not by recommendation.

The burden is upon the defendants to demonstrate the propriety of removal to this court. Defendants have failed to carry their burden, and **plaintiffs' Motion to**

**Remand will be Granted.** The case will be remanded to the state District Court for Denver, Colorado.

Plaintiffs obtained an *ex parte* Order from the state court which granted their request for the appointment of a receiver. After defendants removed to this court, and after a telephone conference of April 7, 2000, I entered Orders which stayed any activities by the receiver, and stayed any major activities by defendant Tirman until after the question of jurisdiction was resolved. Because I find that the federal court lacks jurisdiction, **I will vacate the Order which stayed all receivership and corporate activities.**

## II. FACTS

### A. Summary of Events.

Plaintiffs are minority shareholders in Environmental Remediation Holding Corporation ("ERHC"). In their Complaint, they recite the following series of events, which I summarize here.

ERHC is an oil and gas company which was created for the purpose of exploring and exploiting mineral resources. In 1997, ERHC entered into an agreement with the Democratic Republic of Sao Tome Principe ("Sao Tome"), an island which is southwest of Equatorial Guinea and Cameroon. Under the agreement, ERHC was obligated to pay "at least $5 million" for which, in return, it would be permitted to explore and exploit mineral resources within the maritime boundaries of Sao Tome. This agreement with Sao Tome is essentially the sole asset of ERHC.

ERHC paid approximately $1 million of the $5 million, and found itself in need of additional funds. Some groups of investors, who are now a part of the plaintiffs in this action, formed several limited liability companies ("the LLC's") for the purpose of raising more money. Collectively, these LLC's agreed to pay $3 million in exchange for 51 percent of ERHC's voting capital stock, and in exchange for the right to appoint three of the seven members of

ERHC's Board of Directors ("the Board"). The $3 million was to be paid in installments, with a first installment of approximately $1 million. The first installment was paid. However, the LLC's had difficulty raising the additional funds, and began looking for other investors.

Some members of the Board entered into discussions and negotiations with Geoffrey Tirman, one of the defendants. Ultimately, four members of the Board, in a meeting which did not include, or perhaps excluded, the three members who were designated by the LLC's, voted to accept an offer from Tirman. The agreement with Tirman provided that in exchange for his payment of $1 million in cash and a working $4 million line of credit, Tirman would receive sufficient shares of stock to make him the majority shareholder with 76.43 percent of the outstanding stock.

Plaintiffs assert in their Complaint that the meeting which resulted in the approval of the acquisition by Tirman was illegitimate, and that Tirman acquired his interest in ERHC through fraud. Plaintiffs allege that since acquiring his majority control of ERHC, "Tirman has engaged in a conscious and premeditated scheme to weaken ERHC's financial condition in order to position himself to acquire ERHC's asset [the agreement with Sao Tome] for himself." Complaint at ¶ 58. They list a litany of events which, according to them, demonstrates that Tirman has "intentionally thrown ERHC into insolvency and has sabotaged its sole asset for his own personal gain." *Id.* at ¶ 30.

Some of the events upon which plaintiffs rely in order to demonstrate Tirman's bad faith are listed in their First Claim for Relief, which alleges Breach of Fiduciary Duty. Plaintiffs list the following "bullet points:"

♦ Intentionally creating a financial crisis for ERHC;

♦ Intentionally causing ERHC's insolvency;

◆ Managing ERHC while under an irreconcilable conflict of interest;

◆ Refusing to attempt to obtain adequate financing to fund corporate operations;

◆ Directing ERHC without legal authority;

◆ Intentionally disseminating false information to the shareholders about ERHC's assets;

◆ Intentionally damaging ERHC's sole asset by publicly making disparaging and insulting comments about the government and people of [Sao Tome];

◆ Refusing to cooperate with the government of [Sao Tome] in resolving its border dispute;

◆ Refusing to pursue development of the asset;

◆ **Committing violations of federal securities law;**

◆ Submitting false information on ERHC's public filings;

◆ Refusing to negotiate in good faith with [Sao Tome, a junior partner], ERHC's creditors, Nigeria, etc.

◆ Engaging in false and/or misleading accounting practices.

Complaint at ¶ 78, emphasis added.

### B. Claims of Plaintiffs.

Based upon all of the events which are asserted in the Complaint, plaintiffs have asserted the following seven claims in their Complaint, all denominated as state law claims: (1) Breach of Fiduciary Duty; (2) Unjust Enrichment; (3) Recission; (4) Accounting; (5) Common Law Fraud and Deceit; (6) Conspiracy to defraud; and (7) Gross Negligence. Notably, although plaintiffs mention federal securities law among their bullet points (at the emphasized bullet point above), and recite in several other parts of the Complaint certain alleged violations of securities law by Tirman, plaintiffs state no claim for any relief under federal securities law, or any federal law.

### C. Alleged Grounds for Removal.

In the Notice of Removal, defendants assert that federal jurisdiction is proper for the following reason:

> The complaint explicitly alleges that defendants have engaged in "Violations of Federal Securities Law." (*See* Complaint, ¶¶ 68, 69, p. 20.) Thus, plaintiffs' claims arise under the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

Notice of Rem. at ¶ 7, emphasis added. Defendants rely upon 28 U.S.C. § 1331. That section states:

> The district courts shall have original jurisdiction of all civil action arising under the Constitution, laws or treaties of the United States.

28 U.S.C. § 1331.

### D. Summary of Securities Allegations.

Paragraphs 58 through 73 of the Complaint contain textual descriptions of all of the events which are summarized in the bullet points of paragraph 78, which have been provided above. Defendants rely upon paragraphs 68 and 69 of the Complaint to support their argument that this case is one which arises under federal securities law. Together, the 16 paragraphs, including paragraphs 68 and 69, fall beneath a heading which states, "Tirman's Egregious Conduct." Complaint at p. 14. The 16 paragraphs constitute a listing of the facts, events or circumstances which plaintiffs allege give rise to their state-law claims for relief.

In paragraph 68, plaintiffs state that "Tirman continues to violate federal securities law." Plaintiffs include several examples of ways in which Tirman has allegedly done this, such as his inclusion of false statements in public filings, his refusal to file certain SEC reports, and his manipulation of the stock of ERHC for his own benefit. Complaint at ¶ 68.

Paragraph 69 consists of two brief sentences. It states nothing more than that "[b]ecause of Tirman the SEC is currently

**1092**

investigating ERHC. The mere existence of this investigation further damages relationships with [Sao Tome] and others." Complaint at ¶ 69.

### III. PRINCIPLES OF LAW

 The issue to be resolved is whether this case was properly removed from state to federal court. "Removal statues are to be strictly construed... and all doubts are to be resolved against removal." *Fajen v. Foundation Reserve Insur. Co.*, 683 F.2d 331, 333 (10th Cir.1982) (internal citations omitted). Federal district courts must strictly construe their removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) (by enacting the removal statutes, Congress intended to "restrict the jurisdiction of the federal courts on removal" and therefore, the removal statutes are subject to "strict construction"). The party attempting to remove the case to federal court bears the burden of affirmatively establishing that subject matter jurisdiction exists. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97–98, 42 S.Ct. 35, 37–38, 66 L.Ed. 144 (1921).

 The Tenth Circuit Court has held that in order to support removal jurisdiction, "the required federal right or immunity must be an essential element of the plaintiff's cause of action, and the federal controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Fajen v. Foundation Reserve Insur. Co.*, 683 F.2d at 333; *Caterpillar v. Williams*, 482 U.S. 386, 391–92, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (removal is improper unless the federal issue appears on the face of the plaintiff's properly-pleaded complaint). The test for determining whether a complaint asserts, on its face, a substantial federal question is as follows:

"A case 'arises' under the laws of the United States if it clearly and substantially involves a dispute or controversy respecting the validity, construction or effect of such laws which is determina-

tive of the resulting judgment. *Shulthis v. McDougal*, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912). Thus, if the action is not expressly authorized by federal law, does not require the construction of a federal statute and/or regulation and is not required by some distinctive policy of a federal statute to be determined by application of federal legal principles, it does not arise under the laws of the United States for federal question jurisdiction. *Lindy v. Lynn*, 501 F.2d 1367 [1369] (3rd Cir.1974)." *Madsen v. Prudential Federal Savings & Loan*, 635 F.2d at 801, quoting *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1381 (10th Cir.1978), *cert. denied*, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979) (emphasis added). Of course, if the construction or effect of any federal law is not "determinative" of any resulting judgment, a case has not "arisen" under federal law.

 The basic principle governing the determination of whether federal question jurisdiction exists is the "well-pleaded complaint rule." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). As a practical matter, this rule severely limits the number of cases in which cases may be initiated in or removed to federal court. *Id.* The "well-pleaded complaint rule" states that the plaintiff is the master of his or her complaint, and the plaintiff is free to decide upon what law he or she will rely. *Id.* at 22, 103 S.Ct. 2841; *Howard v. Hibbard Brown & Co.*, 835 F.Supp. 1331, 1332 (D.Kan.1993). The plaintiff may omit a meritorious federal claim if that is the plaintiff's choice. *Caterpillar v. Williams*, 482 U.S. at 392, 107 S.Ct. 2425.

[W]here plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground.

1A *Moore's Federal Practice* ¶ 0.160.

 A corollary to the "well-pleaded complaint rule" is the "artful pleading

rule." Whereas under the former rule a plaintiff is not required to pursue an existent federal claim, under the latter rule a plaintiff "may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board*, 463 U.S. at 22, 103 S.Ct. 2841 (emphasis added). If removing defendants allege that plaintiffs have "artfully," or fraudulently, manipulated their complaint to avoid the appearance of federal subject matter jurisdiction, the court must then evaluate the plaintiff's motive. *See, e.g., In re Taxable Municipal Bonds Litigation*, 1993 WL 165729, *2 (E.D.La.1993). In order to defeat removal, defendants must point to evidence which reflects that plaintiffs' failure to plead a federal claim was not in good faith, but rather "was an attempt to conceal the fact that [the] claim was truly federal...." *Id.* The burden of proving that the allegations of the complaint are fraudulently made is on the party seeking to remove the case, and "any doubts should be resolved in favor of the plaintiff." *Yawn v. Southern Ry. Co.*, 591 F.2d 312, 316 (5th Cir.) *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979).

The Tenth Circuit discussed the artful pleading doctrine in conjunction with the preemption doctrine in *Schmeling v. NORDAM*, 97 F.3d 1336 (10th Cir.1996). The plaintiff in *Schmeling* was a former employee of an air repair station which was certified by the Federal Aviation Administration. He brought suit in state court against his employer, alleging that he was terminated in part because of a single positive drug test, in violation of Oklahoma's Standards for Workplace Drug and Alcohol Testing Act. He pled other state law claims as well, but raised no federal questions or claims in his complaint. Defendant NORDAM removed to federal court, basing removal on the "complete preemption" doctrine. NORDAM argued that the drug-testing of aviation employees was preempted by FAA regulations. *Id.* at 1338. The district court allowed remov-

al, but the Tenth Circuit reversed and ordered the case remanded.

In discussing the preemption doctrine, the Court stated, "When the doctrine is properly invoked, a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim 'necessarily federal in character.'" *Id.* at 1339, quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). The Court observed that application of the preemption doctrine is generally limited to § 301 claims under the LMRA. *Schmeling* at 1339, citing *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). However, the Court also observed that the Supreme Court has "reluctantly" extended the preemption doctrine to allow removal of state actions within the scope of section 502(a) of ERISA, 29 U.S.C. § 1001 *et seq. Schmeling* at 1340, citing *Metropolitan Life*, at 64, 107 S.Ct. at 1547. "[T]he touchstone of the federal district court's removal jurisdiction is ... the intent of Congress." *Metropolitan Life*, at 66, 107 S.Ct. at 1549. In resolving the *Schmeling* case, the Circuit Court found no evidence that Congress intended to allow a person other than the FAA Administrator or the Attorney General to enforce the drug-testing laws. *Id.* at 1344, citing 49 U.S.C. §§ 46106–46108. The Court stated that "[plaintiff] could have chosen to base his complaint on federal law, but as the master of his claim, he chose not to do so." *Schmeling* at 1344. The Court concluded, "absent 'clear congressional intent to create removal jurisdiction,' the 'prudent' approach is to remand to state court." *Id.* at 1342, quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. at 67, 107 S.Ct. at 1548.

Other district courts in this Circuit have held that the artful pleading doctrine generally is recognized only in two types of cases:

The first category of cases are those where a federal statute's preemptive

force is so extraordinary that it necessarily converts an ordinary state common law complaint into one stating a federal claim. * * * The other group of cases encompasses the doctrine of res judicata to bar newly asserted state claims.

*Howard v. Hibbard Brown & Co.*, 835 F.Supp. at 1333 (internal citations omitted); *see also, Peoples Nat'l Bank v. Darling*, 1991 WL 45716, *3–4 (D.Kan.1991); *City of New Orleans v. A Portion of Square 205*, 866 F.Supp. 969, 974 (E.D.La. 1994).

The court in *Municipal Bonds Litigation* noted that the artful pleading doctrine is applied "with great caution." 1993 WL 165729 at *3. It observed that the Third and Fifth Circuits at that time have limited the application of the artful pleading doctrine to cases which involve the preemptive effect of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–187. *Id.*, citing *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1161 (5th Cir.), *cert. denied American Home Insurance Group v. Aaron*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990); *United Jersey Banks v. Parell*, 783 F.2d 360, 363 (3rd Cir.), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986).

## IV. APPLICATION OF LAW TO FACTS

Defendants argue that plaintiffs' complaint "fails within the 'artful pleading' exception to the well-pleaded complaint rule." They ask the court to find that plaintiffs are attempting to defeat removal by masking their federal claims as state law claims. Defts' Memo. in Opp. at 5 (henceforward, "Defts' Opp."). However, defendants point to no evidence in plaintiffs' Complaint which reflects that plaintiffs have omitted to allege a securities claim under federal law through artful or fraudulent means. *In re Taxable Municipal Bonds Litigation*, 1993 WL 165729 at *2. Defendants do not satisfy their burden

by stating that plaintiffs *could have* framed federal claims. Defendants must demonstrate that plaintiffs are *required* to amend their state-law claims into federal-law claims.

Defendants appear to argue that the preemption doctrine applies to this case. They assert that plaintiffs seek in their Second Claim for Relief "to recover for Defendants' federal securities 'insider trading.'" Defts' Opp. at 3. They argue that "[r]ecovery for federal securities law insider trading is subject to exclusive federal court jurisdiction," citing *Hilton v. Mumaw*, 522 F.2d 588 (9th Cir.1975), and *Shults v. Henderson*, 625 F.Supp. 1419 (W.D.N.Y.1986). Defts' Opp. at 3. First, I do not agree that plaintiffs seek in their Second Claim "to recover" any relief pursuant to federal securities claims. Second, defendants' cases do not support their contentions, and both cases are distinguishable from the present circumstances. Finally, defendants have pointed to no case which holds that the preemption doctrine, in addition to claims under LMRA and ERISA, has been extended to apply to federal securities law as well.

First, plaintiffs' Second Claim for Relief states a state-law claim for Unjust Enrichment. It asserts that defendants have been unjustly enriched as a result of their unlawful conduct. Plaintiffs then list the conduct which gives rise to the claim for Unjust Enrichment, and that conduct includes, for example, such actions as receipt of shares which were illegally issued, abuse of corporate opportunities, tortious interference with business relations, and diversion of assets through self-dealing. Plaintiffs' mention of "insider trading" is only one item in this list, and it is mentioned virtually as an afterthought: "[a]dditionally, Defendants have been enriched by their insider trading." Complaint at ¶ 86. This mention of "insider trading" does not turn plaintiffs' claim for Unjust Enrichment into a claim for relief pursuant to the federal securities law. "Insider trading" is listed by plaintiffs as merely

one means by which Tirman has unjustly enriched himself. "Insider trading" as such is not an essential part of the Claim, and the construction of securities laws would not be determinative of the Claim. *Madsen v. Prudential Federal Savings & Loan,* 635 F.2d at 801. Although plaintiffs possibly *could* have filed a claim under federal securities laws, they have elected not to do so. Under the well-pleaded complaint rule, plaintiffs are free to ignore remedies which may be available to them under federal law, and seek only remedies which are available under state law.

Second, the *Hilton* and *Shults* cases do not support defendants' position, and both are distinguishable. In the *Schults* case, plaintiff-stockholder brought an action in federal court, charging the corporation and its chief executive officer with violations of federal and state securities laws, and common-law fraud. Jurisdiction was challenged by one defendant, but the court found that jurisdiction was properly based upon Section 22 of the Securities Act of 1933, codified at 15 U.S.C. § 77v. *Schults* at 1423. However, in *Schults,* plaintiff himself elected to frame part of his claims as federal claims, and plaintiff himself elected to file in federal court. *Id.* at 1420. As master of his complaint, he was entitled to do so. The *Schults'* court was not asked by the litigants to address the question that is presented here: whether plaintiffs' mere mention of "insider trading" as part of a state-law claim for Unjust Enrichment requires removal.

In the *Hilton* case, plaintiff brought claims in federal court for common-law and equitable fraud, for violation of a Washington statute, and for violation of SEC rule 10b-5. One party challenged jurisdiction, and, among other reasons, argued that the case was more appropriately a state probate proceeding. The court held that jurisdiction was proper in federal court because plaintiff had alleged a claim under Rule 10b-5. In a footnote, the court stated: "federal determination of [defendants'] liability under Rule 10b-5 could not possi-

bly present a threat of conflicting adjudications, since state courts lack jurisdiction over such claims." *Hilton.* 522 F.2d at 593, n. 2, citing Securities Exchange Act of 1934 § 27, as amended,. 15 U.S.C. § 78aa.

As in the *Shults* case, the court in *Hilton* was not asked to address the issue that is presented here: whether plaintiffs' mention of "insider trading" as a part of a claim requires or permits removal. The plaintiff in *Hilton* framed a federal claim, and sought relief pursuant to the federal claim in federal court. No such circumstances are presented here.

Defendants point to the fact that plaintiffs recite in their Complaint the fact that "Tirman continues to violate securities law," Complaint at ¶ 68, and point to the fact that plaintiffs indicate several actions which allegedly reflect various securities violations. Defts' Opp. at 6. Defendants argue that plaintiffs' "resort to federal securities law pervades the Complaint," Defts Opp. at 7, and they argue that plaintiffs' language in their Complaint "requires the Court to examine the alleged 'violations of federal securities law' to determine whether Defendants have breached fiduciary duties." *Id.* at 6. Defendants assert that because plaintiffs have referenced various securities violations in the context of their Complaint, they may not deprive defendants of the federal forum to which they are entitled. *Id.* In support of their arguments, defendants cite the cases of *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), and *Ching v. Mitre Corporation,* 921 F.2d 11 (1st Cir.1990). Both of these cases are distinguishable from the present case.

In the *Moitie* case, plaintiffs Moitie and Brown were originally part of a group of plaintiffs who brought an anti-trust action in state court. The case was removed to federal court, and the district court judge dismissed all of the claims "in their entirety" on the ground that plaintiffs had not alleged an injury to their business or property within the meaning of § 4 of the

Clayton Act, 15 U.S.C. § 15. *Moitie*, at 394, 101 S.Ct. at 2427. Most of the plaintiffs appealed the judgment to the Ninth Circuit. Moitie and Brown, however, "chose not to appeal and instead refiled the two actions in state court." *Id.* Although their complaints in state court "purported to raise only state-law claims, they made allegations similar to those made in the prior complaints. . . ." *Id.* Defendants removed Moitie and Brown to federal court, the court denied remand and again dismissed their case.

The *Moitie* case is distinguishable from the present case because the district judge found, and the Court of Appeals expressly agreed, that Moitie and Brown "had attempted to avoid removal jurisdiction by 'artful[ly]' casting their 'essentially federal law claims' as state-law claims." *Id.* at n. 2. In the circumstances presented, the application of the artful pleading doctrine would appear to flow naturally from the sequence of events. Motie and Brown suffered the dismissal of their case by the federal court, and in lieu of appeal took the same claims to a state court. In the present case, however, as I have already noted, defendants have presented no evidence which demonstrates that plaintiffs are presenting state-law claims as part of an artful or fraudulent effort to avoid federal jurisdiction.

In the *Ching* case, plaintiff filed three claims in state court. Two of the claims sought relief under Massachusetts law for disability and national-origin discrimination. The third claim alleged a claim for relief pursuant to the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq. Ching*, 921 F.2d at 11. Defendant removed the case to federal court. Plaintiff moved to remand, and simultaneously moved to strike his sole federal claim. The district court denied the motion to remand, and the First Circuit affirmed. The Circuit Court stated, "[a]n amendment to a complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction." *Id.* at 13.

The *Ching* case is clearly distinguishable from the present case. In *Ching*, plaintiff specifically alleged a claim for relief pursuant to a federal statute. Here, on the other hand, plaintiffs have alleged no such federal claims for relief. Thus, the *Ching* and *Moitie* cases do not support defendants' argument that plaintiffs, because they mention violations of federal securities law as a part of the factual circumstances which support their state-law claims, may be forced to amend their Complaint in order to state federal claims.

Contrary to the circumstances presented in *Ching* and *Moitie*, plaintiffs' recital in this case of alleged securities violations is contained within a listing of factual events or circumstances. Plaintiffs do not seek any remedy which is provided by federal securities law. Instead, they limit their remedies to the relief which is available to them pursuant to the state-law claims. As the masters of their claims, plaintiffs may elect to ignore any federal claims which could potentially be filed.

Plaintiffs could eliminate their mention of securities law violations from their factual scenarios, and the absence of any such mention would have no effect on the efficacy of any of their claims. The allegation of securities fraud is merely one factual event, among others, upon which plaintiffs premise their state law claims. As such, the alleged "'violation of securities law' is not an essential element of the plaintiff's cause of action." *Fajen v. Foundation Reserve Insur. Co.*, 683 F.2d at 333. I do not find that the several statements by plaintiff of alleged violations of federal securities law "seek a remedy expressly granted by a federal law," require a "construction of a federal statute," or require a determination of a claim in light of some "distinctive policy of a federal statute." *Lindy v. Lynn*, 501 F.2d at 1369. Thus, I do not find that any securities claims are necessary to plaintiffs' Complaint.

Other courts have reached the same conclusions where similar factual circum-

stances were presented. In *Municipal Bonds Litigation,* plaintiffs sued the defendant bank upon allegations that the bank had sold a number of bonds which defendants knew, or reasonably should have known, were worth substantially less than their sale price. Plaintiffs asserted claims for breach of the duty of due care, breach of fiduciary duty, common law and statutory fraud, suppression of material facts, deceit, and conspiracy to commit fraud. Defendants removed the case to federal court, arguing that "by their very nature and similarity to § 10(b) and Rule 10b–5 claims, the state law fraud claims asserted in the Amended Complaint are in fact § 10(b) and Rule 10b–5 claims." *In re Taxable Municipal Bonds Litigation,* 1993 WL 165729 at *1. The court rejected defendants' arguments:

> I am not persuaded by defendants' argument that a claim under § 10(b) and Rule 10b–5 is "necessary" to plaintiffs' complaint. Neither the grant of exclusive federal jurisdiction over 1934 Act claims nor the similarity between statutory and common law fraud and § 10(b) and Rule 10b–5 violations mandate a determination that plaintiffs' Amended Complaint in fact alleges federal claims. Simply put, defendants have done no more than demonstrate that plaintiffs may have a viable federal claim in addition to their state law claims. The plaintiff is the master of his complaint and may omit a meritorious federal claim if that is his choice. *Aaron v. National Union Fire Ins. Co.,* 876 F.2d 1157 at 1161 n. 7 ("[I]f [the plaintiff] chooses state court and fails to plead a federal cause of action, he cannot be forced to amend his complaint to do so.")

*Id.* at *3. As in *Municipal Bonds Litigation,* plaintiffs in this present case are also free to "omit a meritorious federal claim" if that is their choice. Having declined to state any claims for relief under any federal laws, plaintiffs cannot be forced to amend their complaint in order to do so. *Id.*

■ The court in *Municipal Bonds Litigation* also rejected the claim that under the Federal Securities Act the federal courts have exclusive jurisdiction over cases dealing with securities. The court wrote:

> [W]hile it is true that the federal courts have exclusive jurisdiction over actions brought under the 1934 Act, 15 U.S.C. § 78aa, the 1934 Act also provides that:
>> The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist in law and equity ... nothing in this chapter shall affect the jurisdiction ... of any state over any security or any person insofar as it does not conflict with the provisions of this chapter or the rules and regulations thereunder.

*Id.,* citing 15 U.S.C. § 78bb (deletions in original). Defendants in this present case have not demonstrated that the rights and remedies sought by plaintiffs in Denver District Court would be in "conflict with the provisions of this chapter or the rules and regulations thereunder."

One district court in this Circuit adopted the reasoning of the district court in *Municipal Bonds Litigation,* and in similar factual circumstances reached the same conclusion. *Howard v. Hibbard Brown & Co.,* 835 F.Supp. 1331, 1333 (D.Kan.1993). In the *Howard* case, plaintiffs asserted claims which were based upon violations of the Kansas Securities Act, K.S.A. 17–1268, common law fraud, and common law negligence. Defendants argued that the court should apply the artful pleading doctrine. The court rejected defendants arguments, and wrote:

> As in the *Municipal Bonds* case, this court is faced with a situation where plaintiffs have declined to assert a federal claim and instead couched their complaint solely in terms of state law, presumably to avoid being placed in multidistrict litigation. As the *Municipal Bonds* court wrote, "While the decision to forego federal claims may have

been strategic, it has not been shown by defendant to be fraudulent.' "

*Id.* at 1334 (quoting *Municipal Bonds Litigation,* 1993 WL 165729 at *5). The court granted plaintiff's motion for remand.

Removal has been denied in numerous other cases in which federal statutes formed a·part of the basis for a claim in the case, but where the plaintiffs had declined to pursue federal claims. *See, e.g., Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (plaintiffs alleged in state court that the drug Bendectin caused birth defects, and brought claims for negligence, breach of warranty and fraud; the case did not become removable because plaintiffs asserted that the drug was misbranded in violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*); *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (no federal jurisdiction even though the central issue in the case turned upon the interpretation of ERISA); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 54 F.Supp.2d 1042 (D.Kan.1999) (plaintiffs brought a claim in state court for unfair competition, asserting that patent litigation between defendant and another was "sham litigation;" presence of patent issues in suit did not result in federal question jurisdiction); *Drake v. Cheyenne Newspapers, Inc.,* 842 F.Supp. 1403 (D.Wyo.1994) (state court claims by employees that their First Amendment rights were violated by their employer, not removable).

## V. CONCLUSION

In conclusion, defendants have failed to carry their burden with respect to the removal of this case from state court. I find and conclude that the federal court lacks jurisdiction.

It is therefore ORDERED as follows:

1. Plaintiffs' Motion to Remand [filed April 7, 2000] is GRANTED.

2. The clerk is directed to remand this case to Denver District Court.

3. The stay which I imposed on April 7, 2000, upon receivership and corporate activities is VACATED.

4. All other pending motions are DENIED WITHOUT PREJUDICE.